ALAN V. WEINER, an Infant, by AUDREY WEINER, His Guardian ad Litem, Respondent, v GREYHOUND BUS LINES, INC. et al., Appellants, et al., Defendant.

Second Department, December 27, 1976

*Reilly & Reilly* for Barbara Weiner, appellant, and *Schwartz, Levitt, Sommer & Blitz* for Greyhound Bus Lines Inc., appellant (*Arthur N. Seiff, John G. Reilly* and *Samuel Levitt* of counsel; one brief).

*Spatt & Bauman, P. C. (Bert Bauman* of counsel), for respondent.

HOPKINS, J. The action is brought to recover for personal injuries arising out of the claimed negligence of the defendants. The issue before us is whether the action is barred by the doctrine of collateral estoppel. Special Term held that it was not barred. We affirm. The prior action in which the defendants were successful in resisting recovery did not conclude the infant plaintiff in this action, for he was not actually a party to the prior proceedings.

## I.

On March 7, 1971, the infant plaintiff (then 9 years old) and his sister Julie (then 10 years old) were passengers in an automobile owned by their father and operated by their mother (defendant Weiner), when it collided with a bus owned by the defendant Greyhound and a second automobile owned and operated by Barry Stone.[1] As a result of the collision, the infant plaintiff suffered serious injuries and his sister Julie was killed.

In due course an action was commenced by their grandmother (Audrey Weiner) in the United States District Court, Eastern District of New York, against the defendants Weiner and Greyhound, as well as Barry Stone, for the recovery of damages on behalf of the infant plaintiff due to his personal injuries and for the recovery of damages due to the wrongful death of Julie. Audrey sued in two separate capacities, i.e., as guardian ad litem of the infant plaintiff, and as administratrix of the estate of Julie.

Before the Federal action came to trial, the infant plaintiff's action was dismissed without prejudice for lack of diversity of citizenship. Accordingly, the present action was then instituted by Audrey, as guardian ad litem of the infant plaintiff. The Federal action continued and resulted in a dismissal by the court of the complaint against the defendants Greyhound and Stone as a matter of law, and a verdict in favor of the defendant Weiner by the jury, which found no negligence on her part. On appeal, the judgment was affirmed by the Court of Appeals, Second Circuit *(Weiner v Weiner,* 535 F2d 1244).

The defendants Weiner and Greyhound then moved to dismiss the complaint in this action on the ground that the judgment in the Federal action collaterally estopped the in-

---

1. Barry Stone is named as a party defendant in this action, but is not a party to this appeal.

fant plaintiff from maintaining his suit. Special Term denied their motions.[2]

## II.

The appealing defendants contend that the basic issue common both to the Federal action and this action is their negligence; that this issue was fully litigated in the Federal action by the same attorneys who now represent Audrey and the infant plaintiff; that no additional proof could be presented at the trial of this action; and that the doctrine of collateral estoppel intervenes to bar a second action for the reasons of public policy enunciated in *Schwartz v Public Administrator of County of Bronx* (24 NY2d 65, 70, 72).

The infant plaintiff, on the other hand, points out that his cause of action was removed from the Federal action and that, consequently, he was not bound by the unfavorable disposition to Audrey in her capacity as administratrix of the estate of Julie. Moreover, he asserts that the defeat in the Federal action was probably the result of a reluctance by the jury to permit the defendant Weiner, as mother of Julie, to share in a recovery for wrongful death caused in large part by that defendant's conduct.

A review of the positions of the parties compels an analysis of the reasons underpinning collateral estoppel and *res judicata* generally.

## III.

In its broadest sense, the doctrine of *res judicata* is based on the interests of practicality and finality—that is, that limits ought to be imposed on litigation, and that once a cause has been fairly tried, a second suit for relief based on the same facts ought to be foreclosed (*Matter of New York State Labor Relations Bd. v Holland Laudry,* 294 NY 480, 493-494). Collateral estoppel is but a corollary to the doctrine—a special aspect which introduces the gloss that an identical issue decided in the first action and decisive of the second action cannot be relitigated, unless a fair and full opportunity to contest that decision was not afforded (*Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65, 71, *supra*).

---

2. Originally, the defendants moved to dismiss the complaint immediately after their successful defense in the District Court. Special Term denied the motions without prejudcie to renewal upon the outcome of the appeal in the Second Circuit.

Inherent in the concept of collateral estoppel is the fairness of the process, to the end that a party should not be precluded from obtaining a full and fair hearing in a forum on his claim (cf. *Read v Sacco,* 49 AD2d 471, 474; *Vincent v Thompson,* 50 AD2d 211, 218).

Although collateral estoppel thus emphasizes identity of issues rather than identity of parties, the relationship of the parties in the first litigation must still bear high significance in the analysis. The doctrine, it is true, bars not only parties to the first litigation, but also their privies *(Downey v Seib,* 185 NY 427, 433). Yet, privity is an admittedly amorphous term—it "denotes mutual or successive relationship to the same right of property" *(Bigelow v Old Dominion Copper Co.,* 225 US 111, 129). Here, the right of the infant plaintiff to recover for his personal injuries is neither mutual nor successive as regards the claim arising out of the wrongful death of his sister.

The argument of the defendants rests primarily on the relationship of the grandmother in the two litigations. But her presence in both actions was not as an individual, but as a representative, and a representative of different interests. In the Federal action she appeared as plaintiff in her capacity as administratrix of the estate of the deceased sister. In this action, she sues for and on behalf of the injured infant as his next friend. Thus, her responsibility in the first action was not coterminous with her responsibility in the second action. Usually, in the absence of a state of facts in which justice requires that an estoppel be established, a judgment for or against a party in one fiduciary capacity will not conclude the determination of a right advanced in another fiduciary capacity (cf. *Molino v County of Putnam,* 29 NY2d 44, 49; *Matter of Sullivan,* 289 NY 323; *Matter of Auditore v National Sur. Co.,* 249 NY 335; *Bell v Merrifield,* 109 NY 202). "The legal differences between individuals and estate representatives are practical as well as technical, and too well established to require discussion. This being so, it is unnecessary to do more than note the additional and subsidiary consideration that in an action for conscious pain and suffering, and to a lesser degree in a wrongful death action, an executor or administrator represents interests additional to those of the distributees" *(Molino v County of Putnam,* 29 NY2d 44, 49, *supra;* see, also, *Deaton v Gay Trucking Co.,* 275 F Supp 750, 754-755; *Illinois Cent. R. R. Co. v Slater,* 139 Ill 190).

If the accident had resulted in merely injuries to both brother and sister, and were they adults, the fortuitous event that the sister's action had proceeded separately to a verdict against her would not per se destroy the right of the brother to a trial in his action, since due process demands that he is entitled to be heard (see *Commissioners of State Ins. Fund v Low,* 3 NY2d 590, 595; *Kowalski v Mohsenin,* 38 AD2d 274, 277). As Justice WHITE said in *Blonder-Tongue v University Foundation* (402 US 313, 329): "Some litigants—those who never appeared in a prior action—may not be collaterally estopped without litigating the issue. They have never had a chance to present their evidence and arguments on the claim. Due process prohibits estopping them despite one or more existing adjudications of the identical issue which stand squarley against their position."

We think that the same reasoning applies here.[3]

Two other sides of the concept of collateral estoppel are urged by the defendants to possess singular relevance here. Besides the nominal identity of the grandmother in both actions, they lay stress on the fact that the same attorneys represent her in the actions. The effect of *res judicata* ranges beyond the compass of the parties and their privies, in the event that there is actual participation in the first litigation by a person who is not a party and who later sues in the second action (cf. *Watts v Swiss Bank Corp.,* 27 NY2d 270; 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.33). That participation must amount "to a sharing in control of the litigation" *(Watts v Swiss Bank Corp.,* 27 NY2d 270, 277, *supra).*

But an infant of the age of the plaintiff can hardly be said to control litigation, or, indeed, be in a position to control litigation (see, e.g., *Whitehead v General Tel. Co. of Ohio,* 20 Ohio St 2d 108; Ann, 41 ALR3d 536). Nor can it be said that the entrance of the same attorneys in both suits on behalf of the plaintiffs converts an absence of a party in the first into an actual presence as a party bound by that judgment.

The second aspect of *res judicata* to which the defendants refer is closely allied to the notion of participation. There are instances in which a party suing in a representative capacity,

---

**3.** Cases in other jurisdictions hold that a father who sued as next friend for his child is not barred by a defendant's verdict from suing in his own behalf for damages *(Detore v Demers Bros.,* 312 Mass 531; *Sayre v Crews,* 184 F2d 723; *Hyba v C. A. Horneman, Inc.,* 302 Ill App 143; *Smith v Bishop,* 26 Ill 2d 434; *Thompson v Hamrick,* 23 N C App 550; Ann, 116 ALR 1087).

but personally benefiting if a recovery is procured in either action, may be barred by an adverse decision in the prior action from instituting the second action (see, e.g., *Voorhees v Chicago & Alton R. R. Co.,* 208 Ill App 86; *Keith v Willers Truck Serv.,* 64 SD 274). This is not such an instance. The beneficiaries of any recovery in the Federal action would not have been either the administratrix or the infant plaintiff, but the parents. The infant plaintiff, in point of fact, asserts this circumstance as an explanation of the unfavorable decision in that action—that the jury was swayed by the fact that the mother, who was a defendant in the action, would have personally benefitted from a recovery.

From the standpoint of judicial timesaving, it would have, of course, been desirable to try both actions together. Fragmented litigation should not be encouraged for all the reasons of public policy which underlie the doctrine of *res judicata.* Nevertheless, the desirable result of a joint trial could not be reached here for reasons derived from the concepts of federalism. In the interests of protecting the rights of the infant plaintiff, the defeat of the representative in the Federal action cannot serve to defeat the present action without a trial on the merits.

We therefore affirm the order of Special Term.

GULOTTA, P. J., LATHAM, SHAPIRO and HAWKINS, JJ., concur.

Order of the Supreme Court, Kings County, dated February 25, 1976, affirmed, with one bill of $50 costs and disbursements, payable by appellants jointly.